DOWAGIAC MANUFACTURING COMPANY v. J. W. BENSON and Another.[1]

May 10, 1907.

Nos. 14,886—(4).

**Sale—Price—Evidence.**
> A certain written contract for the sale of farm machinery construed, and *held* to furnish evidence of the price agreed to be paid for the machinery.

[1]Reported in 111 N. W. 924.

Action in the district court for Jackson county to recover $1,329 for goods sold and delivered. The case was tried before Quinn, J., who, at the conclusion of plaintiff's testimony, dismissed the action. From an order denying a motion for a new trial plaintiff appealed. Reversed and new trial granted.

H. H. Potter, Sears & Potter and Allen & Ward, for appellant.

Knox & Faber, for respondents.

ELLIOTT, J.

This action was brought to recover the contract price of certain farm machinery which the appellant claimed to have sold and delivered to the respondents in pursuance of a written contract.

The contract which was offered and received in evidence was in the form of an agreement whereby the respondents agreed to purchase of the appellant grain drills and seeders of its manufacture to supply their trade in certain territory "at prices shown by printed list on reverse side of this contract." At the trial the plaintiff offered this written contract in evidence, and the court dismissed the action, because the writing did not furnish evidence of the prices which were to be paid for the machines. There was no other evidence on this issue. The question is whether the price which the respondents agreed to pay can be determined from the written contract.

It is alleged that upon the defendants' order the plaintiff delivered to them one sixteen double disc drill, two eighteen double disc drills, five twenty double disc drills, six twenty two double disc drills, in all fourteen drills, all of which were duly accepted, except one of the twenty two double disc drills, which was thereafter, on plaintiff's order, returned to plaintiff; that the defendant agreed to pay therefor the following prices as determined by the price list printed on the back of the written contract, viz.: For steel frame eighteen double disc shoe drills at the rate of $94 each, for each steel frame twenty double disc drill at the rate of $100 each, for each steel frame twenty two double disc drill at the rate of $111 each, and for each steel frame sixteen double disc drill at the rate of $86 each.

In order to determine whether respondents agreed to pay the prices alleged in the complaint, it is necessary to examine the printed matter which appears upon the back of the contract. What there appears

under the general head of "Price Lists" is too complicated to be here set out in full, and it is somewhat difficult to get a clear idea of the same without viewing it as a whole. The drills are classified under the following general heads:

(1) Shoe Drill (wood frame—gear drive).
(2) Shoe Drill (steel frame—chain drive).
(3) Fertilizer Shoe Drill (steel frame—chain drive).
(4) Disc Drill (steel frame—chain drive).
(5) Fertilizer Disc Drill (steel frame—chain drive).
(6) Plain Hoe Drill (steel frame—chain drive).
(7) Fertilizer Hoe Drill (steel frame—chain drive).
(8) Broadcast Seeders (steel frame—chain drive).

Under each of these main headings appear numerous styles of drill, designated by figures and letters, each followed by the price of each article. Thus, under "Shoe Drill (wood frame—gear drive)" appears:

$$11^6a\text{—}x \qquad \$52.00$$
$$13^5a\text{—}x \qquad \$58.00 \text{ etc.}$$

Figures and prices thus arranged appear under each of the general headings above referred to. In a footnote there is an explanation of the letters, but we find no explanation of the meaning of the small figures which, speaking algebraically, would be known as the exponents of the coefficients; that is, for illustration, of the small figure 6 to the right and above the number 11. Nor is there any explanation in the printed part of the contract of the figures which we have referred to as the coefficients.

The defendant Sontag, however, was called for cross-examination under the statute, and testified that "after the making of this contract in December" the machinery in question was received. He further said: "These numbers [unquestionably referring to the written contract] indicate the number of runners on the drill. An eighteen double disc drill would be a drill with eighteen runners, and the twenty double disc drill which we received had twenty runners, and the twenty two double disc drill had twenty two runners." This means that the figures in the price list which we have called coefficients indicate the number of runners on the drill. The exponent is nowhere explained,

but it is apparently not material to this inquiry. On the margin of this particular contract appears the following written statement: "Double disc drills, listed 50c. per runner higher than shoe drills."

The price of the "shoe drill" thus becomes the starting point. By reference to the printed price list on the back of the contract we find that a sixteen-runner shoe drill sells for $78. "Double disc drills" are listed at fifty cents per runner higher than shoe drills. A sixteen-runner shoe drill selling at $78, it is only necessary to add fifty cents per runner, or $8, to get the contract price of a sixteen double disc drill, which is $86. The price of an eighteen shoe drill appears on the list as $85. To this add $9—that is, fifty cents for each of the eighteen runners—and we have $94 as the contract price of each eighteen double disc drill. To the twenty shoe drill, listed at $90 by the same method, add $10, and we have $100 as the contract price for each twenty shoe drill. It thus appears that by referring to the prices under the head of "Shoe Drill," and bearing in mind the statement on the margin, "Double disc drill listed fifty cents per runner higher than shoe drills," it is easy to determine the contract price of the drills referred to in the complaint. The evidence shows that the drills delivered were steel-framed double disc drills, and this refers us to the prices under the head of "Steel Frame Shoe Drill," instead of the different prices under the head of "Wood Frame Drill." It is thus perfectly clear that the prices of the goods sold and delivered are to be figured, with the aid of the writing on the margin of the price list, from the printed price of steel frame shoe drills. We think any jury, with a reasonable explanation of the writing and method by court or counsel, could easily ascertain the price which respondent agreed to pay for this machinery.

The reference in the contract to the prices shown by the printed list on the reverse side of the contract should be construed so as to include the writing placed upon the margin by the parties. It was intended to be an addition to and a part of the printed price list. The parties intended to embody the prices of the machines in the writing itself. As the machinery which was sold differed slightly in construction from any of the several classes listed on the reverse side of the writing, it became necessary to in some way change the printed price list, so as to make the prices to be paid for double disc drills appear upon the contract. The written price list shows the price of shoe drills, and

the parties wrote upon the back of the contract the agreement that double disc drills should be paid for at fifty cents per runner higher than shoe drills. To give effect to the manifest intention of the parties it is necessary to construe this written sentence as a part of the "printed list" on the reverse side of the contract. The words "printing" and "writing" are frequently held each to include the other.

The order appealed from is therefore reversed, and a new trial granted.